IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LEON JOVANI BANKS,

                          Plaintiff,                          OPINION AND ORDER

          v.
                                                              23-cv-750-wmc

DIANE SIMMONS,

                          Defendant.

Plaintiff Leon Jovani Banks, who is representing himself, has been granted leave to proceed on an Eighth Amendment claim that defendant Diane Simmons failed to provide him with adequate medical treatment by discontinuing his prescription of pregabalin.  (Dkt. #1.) Before the court is defendant's motion for summary judgment.  (Dkt. #18.)  For the reasons explained below, the court will now grant that motion.

UNDISPUTED FACTS[1]

A.  Background

Plaintiff Leon Banks is an inmate who was housed at Dodge Correctional Institution ("DCI").  Diane Simmons is employed by the Wisconsin Department of Corrections ("DOC") as an Advanced Practice Nurse-Prescriber ("APNP") at DCI.

When Banks arrived at DCI, he had a prescription for pregabalin, a non-formulary medication.  In correctional institutions, access to non-formulary medications is subject to approval based on strict criteria.  In the case of pregabalin, it is only available if: (1) first-

---

[1] The following facts are material and undisputed as drawn from defendant's reply to her proposed findings of fact, dkt. #30, and defendant's response to plaintiff's proposed finding of fact, dkt. #29.

line treatments (Tylenol, NSAIDS, Amitriptyline and Duloxetine) are shown to be ineffective; (2) the inmate has proven neuropathy by EMG; and (3) the inmate has no history of medication diversion.

From April 27 through June 20, 2023, Banks was under Simmons' care. Simmons met in person with Banks twice during this time and also reviewed his medical records from a previous incarceration and offsite providers, as they became available. During Simmons' intake meeting with Banks on April 27, he reported a history of degenerative disc disease to his lumbar spine and chronic musculoskeletal pain, stating that he was last seen for diagnostic testing and specialist consultation at Aurora Sinai Hospital in Milwaukee. From Banks' physical exam, Simmons noted that Banks had a normal spine profile, but limited range of motion due to pain. He also reported tenderness to palpitation beginning from his mid-spine and ending at the base of his spine, as well as paraspinals, right buttocks, and lower-right extremities. To Simmons, these findings indicated that Banks' pain was in his muscles, rather than his spine itself. After reviewing Banks' history from his previous incarceration, Simmons noted that: treatment with Amitriptyline and Duloxetine had been discontinued because they were causing a sore throat; and the x-rays and MRIs taken during his previous incarceration were mostly unremarkable, except for mild to moderate spinal stenosis with impingement of nerve roots noted in October 2019.

Based on her review, Simmons did not find any indication that continued treatment on pregabalin was appropriate, but did not end Banks' pregabalin prescription at that time. Rather, she advised him that his prescription would be discontinued *unless* documentation from his outside providers showed a failure of first-line treatments.

2

On May 4, 2023, Simmons received and reviewed records from Aurora Sinai Hospital, which did not reflect any use of first-line treatments. However, those records did contain imaging from January and February 2022, showing only mild degenerative changes and no lumbar deformity, which Simmons determined was inconsistent with Banks' reports of severe pain. At this point, Simmons sent Banks a letter explaining that he had not met the criteria to remain on pregabalin, would be weaned off his current prescription, and must exhaust all other preferred treatment options before it would be prescribed again.

On May 18, 2023, APNP Simmons met with Banks again for a follow-up visit, during which she again advised that supporting documentation was still lacking to prescribe him pregabalin and requested contact information for any specialists that had treated him. Then, from a new list that Banks produced, Simmons was able to identify one, additional provider -- the Neuroscience Group.

On June 12, 2023, Simmons received and reviewed those records, which were largely consistent with the records Simmons had reviewed on April 27, noting mild and moderate spinal stenosis with impingement of nerve roots. Moreover, in Simmons' opinion, treatment for these conditions still starts with NSAIDs and physical therapy. Simmons also offered that she would have been *more* concerned if Banks had been unable to feel his lower extremities, but he had been able to move independently during both of their two meetings. Additionally, Simmons suggested in her notes that pregabalin may not be effective in treating Banks' pain, because he was already taking more than the manufacturer's recommended dosage at the time of intake and continued to report uncontrolled pain.

On June 20, 2023, Banks was transferred out of DCI, and Simmons emailed a list of Banks' concerns to his new care providers.

OPINION

Plaintiff's claim against defendant under 42 U.S.C. § 1983 is based on the assertion that her discontinuation of his prescription of pregabalin while incarcerated at DCI from April through June 2023 amounted to cruel and unusual punishment under the Eighth Amendment.  Defendant moves for summary judgment arguing that: (1) plaintiff's medical records demonstrate that he received appropriate medical care; and (2) defendant is entitled to qualified immunity.

In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  In doing so, the court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only competent evidence of a type otherwise admissible at trial, *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).  Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Finally, the party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that it is entitled to judgment as a matter of law.  *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010).  However, if that

initial burden is met, then the non-moving party must show that material disputed issues of fact do exist preventing the entry of summary judgment. *Id.*

The Eighth Amendment's prohibition on cruel and unusual punishment prohibits prison officials from acting with "deliberate indifference" to a prisoner's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). To prevail on an Eighth Amendment claim based on deficient medical care, plaintiff must show that: (1) he has an objectively serious medical condition; and (2) defendant acted with deliberate indifference to that condition. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011); *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Because defendant does not dispute that plaintiff's pain was a serious medical condition for the purposes of summary judgment, the court limits its focus on the second element, which requires proof of the defendant's subjective state of mind. *Arnett*, 658 F.3d at 750. Specifically, plaintiff must show that defendant (1) actually knew of and (2) disregarded a substantial risk of harm. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016); *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). Further, when a prisoner has received some medical treatment for his medical condition, as in this case, the court must defer to the medical professional's treatment decision, unless no minimally competent professional would have chosen the same course of treatment under the circumstances. *Pyles*, 771 F.3d at 409.

Here, plaintiff has produced no evidence from which a reasonable jury could infer that defendant acted with deliberate indifference to his pain when she discontinued his prescription for pregabalin. To the contrary, during the seven plus weeks from plaintiff's

medical intake meeting on April 27 to his transfer on June 20, 2023, the record actually shows that defendant was actively engaged in pursuing appropriate treatment to manage plaintiff's pain in the correctional setting, including delaying a discontinuation of that prescription until having gathered enough understanding to find it necessary under her medical judgment and DOC protocols. Specifically, defendant performed a physical examination, examined plaintiff's past incarceration medical records, and reviewed his records from offsite providers as they became available, which all indicated in defendant's judgment that prescribing plaintiff pregabalin was *not* supported by current prison medical guidelines. Rather, defendant ordered use of first-line treatments, based on what she knew and had learned from reviewing plaintiff's past medical records. Accordingly, no reasonable jury could find that defendant disregarded a substantial risk of harm to plaintiff.

Plaintiff argues otherwise. First, plaintiff directs the court to *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002), in which the Seventh Circuit concluded that a jury should decide whether a nurse and doctor were deliberately indifferent when they refused to provide an inmate his prescribed medicine, or even treat his pain at all, based on a good-faith belief that he was using the medication to get high. Like *Walker*, plaintiff argues that defendant's failure to provide previously-prescribed medication is sufficient to establish deliberate indifference. However, that is where the parallel between this case and *Walker* begins and ends: while the defendants in that case did *nothing* to address Walker's pain, APNP Simmons worked to manage plaintiff's pain using first-line treatment options after confirming that they had not been properly explored as a possible effective treatment. The fact that defendant did not use plaintiff's preferred treatment option is *not* enough for a

6

reasoanble jury to find deliberate indifference. *See Arnett*, 658 F.3d at 754 ("an inmate is not entitled to demand specific care and is not entitled to the best care possible").

Second, plaintiff argues that defendant's treatment decisions were deliberately indifferent because she was aware that previous attempts to treat his pain with first-line medications, including Amitriptyline and Duloxetine had apparently been ineffective and were discontinued. *Id.* ("A prison physician cannot simply continue with a course of treatment that [they] know[] is ineffective in treating the inmate's condition.") However, the record also shows that defendant confirmed that these drugs had been discontinued not because they were ineffective in managing his pain, but rather because they were causing a sore throat. Moreover, there is no evidence from which a reasoanble jury could infer that other first-line treatments were adopted and stopped for any other reason, much less that defendant was aware them, precluding an inference that she was acting with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (deliberate indifference requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.").

Finally, plaintiff argues that defendant stated in her declaration that she "would be more concerned about the moderate spinal stenosis if [plaintiff] reported that he could not feel his lower extremities," and that he in fact reported lower-extremity numbness to a nurse in DCI's health services unit on June 4, 2023. (Dkt. #26-7, at 1.) However, plaintiff has failed to present evidence that defendant ever spoke to that nurse, reviewed this record, or otherwise learned about plaintiff's report of lower-extremity numbness. Indeed,

defendant made the decision to wean plaintiff from pregabalin on May 4, 2023, a month before he reported any numbness and less than a month from his transfer from DCI. Finally, after plaintiff's visit reporting numbness to a nurse, the evidence shows the defendant reviewed newly-received offsite records, but there is no indication that she reviewed his new health services unit notes. Without proof of her awareness of plaintiff's new report, plaintiff cannot prove defendant's disregard his condition. *See Farmer*, 511 U.S. at 837. Because the evidence of record fails to support a reasonable inference that defendant acted with deliberate indifference to plaintiff's pain, she is entitled to summary judgment as a matter of law.

## ORDER

IT IS ORDERED that defendant's motion for summary judgment, dkt. #18, is GRANTED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 17th day of April, 2026.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

8